The opinion of the Court was delivered by

Mr. Justice Johnson.

There can be but one opinion as to the character of the estate which William Clay Snipes took, under the devise from Thomas Snipes. The terms used, “to him and the heirs of his body for ever,” are precisely those which Lord Coke, and on his authority, Sir William Blackstone define, as creating, at common law, a qualified or conditional fee. But there is much difficulty in ascertaining at this day all the properties of this estate; for, although its outlines are preserved, the estate itself having been entirely annihilated by the statute de donis, fetf *94 traces of its peculiarities are to bé found in the English books; and in our own courts the subject is so novel that I have not" been able to discover that any question of the sort has ever- occurred. It is scarcely possible that the question involved in this case should not have existed in a thousand instances; but the probability is, that in the astonishing spirit of liberality which pervades every rank of society, means have been found by which an amicable accommodation has been effected; although I have not been able to ascertain that any generally received rule of construction has prevailed.
We are, therefore, driven -to the necessity of adopting a rale applicable to this abstruse subject, without any other aid than the glimmering lights furnished by the antiquated English authorities; and I feel all the responsibility of such ■an undertaking. If in the interpretation of this devise, we were to apply the broad rule, that the intention of the tes-' tator, to be collected from the plain and obvious meaning of the words, should prevail, the mind would not hesitate in the conclusion. Indeed, the import of the terms are so pointed, that it is difficult to render it more clear by the substitution of others. It is a clear expression of the will of the testator, that the son should take only a life estate, and that the heirs of his body should take an unconditional fee, and, in default of these, that the land should revert to the heirs general of the testator; and if the devise were permitted to take effect, unfettered by the arbitrary exceptions supposed to be authorised by the necessities of society, and which are avowedly predicated on motives of public policy, such would undoubtedly be the order of succession. But the inconveniences resulting from these limited and fettered inheritances, tending to perpetuity, so justly abhorred, induced the English judges, says Sir William Blackstone, 2 Blacks. Comm. 113-14. to invest the grantee of such an estate with the absolute fee, where it was possible, even by the most subtile finesse of construction; and proceeding on this principle, they determined that the birth of issue invested the grantee with an absolute or unqualified fee, for three purposes: First, to aliene; second,, to forfeit;., tail’d, to charge with rent and the likel
*95 I have thought it necessary to premise thus much, less with a view to impugn the adjudications of the English courts, than to show that as great violence of construction has been used with respect to these grants, as is admissible under any circumstances; for, however strongly 1 might incline towards a construction calculated to promote a great public convenience, there is a point beyond which the cord will not bear straining. Extremes in any thing are nn-wdse, and they too frequently produce the dreaded result, as is well illustrated by the history of these estates, as connected with the statute de donis. Influenced by the same motives -of public policy, 1 am disposed to follow so high authority, as far as the landmarks are clearly visible; but beyond this, I think it unsafe to venture. It results from this view, of the subject, that under this devise, William Clay Snipes had, after the birth of issue, the power of alienating the lands in question, and it is under this power alone, that Mrs. Fishburne can take under the devise to her; as forfeiture is unknown in this country, and she does not claim under a rent charge, or the like.
Alienation may be effected by devise; and when this question was first presented to my mind, its strong inclination was, that as one of the means, it was embraced in the power given to the tenant of a conditional fee, to alienate on the birth of issue; but I am satisfied on a more attentive consideration, that its meaning was intended to be restricted to alienation by deed. It will be recollected that if the devisee had died without having boon divested of the estate, by some of the means authorized by law, it would have descended to the heirs of his body, and the devisee would have taken effect per formara doni. It is also clear that the devise could not take effect until after the death of the testator, so that the rights of the issue and the devisee devolved on them both at the same instant, and the question is, which of these, is to be preferred. This proposition, I think, places the claims of the devisee in the strongest possible view, as it presupposes the power of die testator, in respect to the devise, equal to the legal operation of the terms, creating the fee conditional; and consequently their rights must he determined by ¿he order, in point of time, in which the devise *nd the limitation over to the heirs; are to take effect. *96 In this state of tilings, I think, the principle clearly is, that he shall take, who derives his title from the highest source; for, although an instant may, for general purposes, he regarded as indivisible, yet there aré cases in which the law admits, from necessity, a priority even in those cases; as for instance, where a father was seized of lands, which would descend to an only son at his death, and both die so instantaneously that it is impossible to distinguish which was the survivor; there the heirs of the father would inherit in preference to those of the son; and this preference is given, because of the certainty that thejather was seized, and the uncertainty whether the son was or not. (a) I have not been able to find any case in which the principle has been directly applied to the precise case under consideration; yet, I think, it is impossible to mistake its application, if we compare this estate with an estate held in joint-tenancy, to which it has been made to apply. These estates, though different ia the manner of their creation and duration, and some of their properties, with respect to the powers which the tenants have over them are strikingly analogous. A joint-tenant, like a tenant of a conditional fee, may alien, forfeit, &c. Co. Lit. 180, a. and by *97 ibis means defeat the jus accrcscenth; and yet Littleton says, that if one joint tenant, by testament, devise lands held in joau-ten* •ancy, the devise is void; and the reason given is, that “ no devise can take effect till after the death of the devisor, and all iiiB land presently corneth by the law to his companion who sur-■viveth;”.and his commentator remarks, tnat Littleton, “ by the words post mortem and per mortem,” used m tiie text, st though ■they jump at one instant, alloweth priority of time in the instant,' which lie distinguishetli by per and post. And the reason of this priority is, that the survivor clainieth by the first feoifor, and therefore m judgment oflaw his title is paramount.to the title of tiie devisee, and consequently the devise is void.” Ac cording to this principle, Win. Clay Snipes had, under the de vise from bis lather, Thomas Snipes, after the birth of the issue, the power to alienate; but not having exercised is, by any of uie means authorized by the principle, the devise to Mrs. Eishburne is void, and the laud descended to the heirs of his body, per for-snam doni. (a) It follows tliaf the defendant can take nothing *98 under the deed of Gen. Fishburne, or the release from his wife? but her undivided distributive share, as one of the heirs of his body, and that the object of the defendant’s purchase is probably defeated, and consequently the bond on which the action is “brought, is without an adequate consideration. The solicitude which the law expresses, to favor the claims of the tenant of a conditional fee, and to invest him with an absolute estate, in exclusion of the heirs, and of the possibility of its reverting to the grantor, has had its full share in the consideration of this question; hut, I think, it has been already shewn, that more has already been done to effectuate that object, than can well be justified; and as much and as deservedly as entailments and per- *99 petuities are abhorred, I think it safer to submit to them than for the court to change the old, or establish a new fule, (a)
Cart and GrimJce, for the motion.
Desaussure and Petigru, contra.
The whole object of this motion is attained by the view which the court has taken of this ground, and the consideration of the numerous other questions made* have become unimportant and unnecessary.
The motion is granted. —
Richardson and Nott, Justices* Concurred.

 Although the rulo of the civil law is, that if father and son die at the same instant, so that it is impossible to distinguish the priority of either death, the fattier shall be presumed to have died first, as being conformable to the order of nature; yet it reverses its rule, for the pupose of giving effect to testamentary-donations, depending on the condition of the father’s dying without issue.
“Si Lucius Titius, cum filio puliere, quem solum testamento scriptum here-., dem habebat, perierit, inteliigitur supervixisse filius patri, et ex testamento hieres fuisse; et filii haireditas successoribus ejus defertur, nisi contuarium appro-betur.” 2 Domat, Book 2, Tit. 1. Sec. xi.
“We see also that in alike event of a father and son having perished together, by shipwreck, or by some other accident; another law presumes, under another, view, that the son did not survive the father. It is the case where a testator had required his heir to restore his estate, or part of it, or some particular thing, to another person after the death of this heir, if he should die without children. It is said in that law, that if the person who was charged with this fiduciary bequest, having only one son, this son and his father had died at the same time, by some accident, so that it was impossible to know which of them had survived, it would' be presumed that the son had not survived, and that, therefore, the case of the fiduciary bequest had happened, the person who was charged with it having died without children; which would make the estate go to the person for whose-benefit the fiduciary bequest was devised; whereas, had it been presumed thaf the son had survived, it would have made the case of the fiduciary bequest to cease; and the son having succeeded to his father, he would have transmitted The estate to his heir.” Ib. xii.

 In tlio argument of the case, (which the reporter did not hear,) it is understood to have been urged, that the act of 1791, for making distribution of the estates of intestates, who were seized in “fee. simple,” a fee simple conditional must be-included under the general description, and distributable in default of the tenant’s having made a disposition: at ail events, after the performance of the ■condition, when the estate is said to become absolute.
To which it was replied, that this construction agrees neither with the let-lev nor spirit of the act.
Not with the letter; because when the words “fee simple” are used without qualification, they are understood to relate tp fee simple absolute, in contradis Suction to a base or conditional fee: nor does the estate become absolute upon' the performance of the condition, except for the purposes specified. 2 Black. Com. 110, 111. Coke, commenting on Littleton, who had said, that before the statute de donis, all inheritances were fee simple, remarks, “here fee simple is taken in his large sense, including as well conditional or qualified, as absolute, to -distinguish them from estates in tail, since the statute.” He goes on to shew that -the estate does not become an absolute fee simple by the performance of the condition; for if there be issue and no alienation, and the issue take secundum Jbrmam dora, he takes not an absolute estate, but subject to the same condition. Ji there be issue, and the issue die in the lifetime of the tenant, and before alienation made, the estate will revert. Co. Lit. 19. •
The spirit of the act is equally opposed to this construction; for its Whole ;S.e’ope andpurpose was notto regulate the power of donors in limiting their estates, Jut to prescribe how they shall descend, when no disposition has been made.
If this construction be correct, there is no fee simple conditional; lor the as-íate must always descend to tbs heirs gefteral, (though collateral,) in default of by the tenant.
*98 Or if it is only after the performance of the condition, that the estate becomes subject to the provisions of the act; then, though there should be no alienation, and the issue should die in the lifetime of the tenant, there would be no-reverter: the estate must descend as fee, simple.
If the legislature had intended to effect these objects, unquestionably the intention would have been more plainly expressed.
If after the existence and death of issue, the tenant should aliene, the' estate would, at common law, revert upon the death of the tenant.- How would it be under the statute? There is certainly nothing in the statute to give the-, alienee an absolute estate in this case. Would it revert? Would it descend?
The argument drawn from the act of 1791, seems merely verbal.
Our law on this subject then, is the English common law, before the statute de donis. Before that statute,the question could not have arisen, because lands were not devisable. If the statute de donis had not intervened, the question involved in this case must have been made in the English courts, upon the passing of the statute of wills, 32, Hy. 8, C. 1.
By that statute, “estates of inheritance” were made devisable.
A do-ibt seems to have arisen whether these words, “ estate of inheritance,’' torgbt not include a fee toil; and by the stat. 34 and 35. Hy. 8. C. 5. they were ’ explained to mean eslates in foe simple.
Our act of 1734, (P. Laws, 138,) recognizes the statute of wills, and provides that persons having any estate or interest, in fee simple, in lands or tenements, may devise. If a fee simple conditional may be alienated by devise, if me*! be under the authority of these statutes. The act of 1734 seems to be consistent with, and. to give construction to the act of 1789, authorizing persons bav-in - right or -title to lands, tenements, or hereditaments, to devise. The question then is, whether the English statute of wills, or our own act, which is in the same te ms, authorizes this sorr of alienation.
All the arguments used with respect to our own statute of descents, apply to the construction of these. And the English courts appear to have decided the same question, or perhaps a stronger case, in the instance referred to in the opinion of the court — that estates in joint-tenancy are not devisable; though held, in fee simple.

 The reporter is indebted to a friend for the following note:
Tenant in tail, by bargain and sale, lease and release, covenant to stand seized, Sic. conveys to another and his heirs: the grantee has a base fee simple, determinable on the death of tenant in tail, by the entry of the issue in tail; and Smtil it be so determined, such estate has all the incidents of a fee simple.
But suppose tenant in'tail, covenant to stand seized to the use of himself for life; remainder to J. S. and Ms heirs-. The conveyance were void, and the estate tail not altered; for the remainder is no! to take effect until after his death, when the title of the issue commences, which is paramount to (he title of the remainder man,'and the covenant to stand seized, as to the estate for life, is void; because there is no transmutation of possession; and therefore, if he afterwards levy a fine, or suffer a recovery to the use of a stranger, it shall enure to such use. Cro. Eliz. 895: 2 Salk. 619-620. Machell v. Clarke. Cf. 3 Rep. 84. b. 10 Rep. 96, a. Seymour’s case. Took, v. Glascock, 1 Saund. 260.
And so nota, the diversity between conveyances inter vivos, an d testamentary dispositions; and that the instance of the jus accrcscendi between joint tenants is not singular in our jurisprudence.
The genius of the oldfeudallaw, (andours on this point'is the old feudalism, modified by a very arbitrary construction of the courts, before the stat de donis, 33 Edw. 1.) is further discovered in what Glanville says, lx. vii. c. 1. on the subject of alienation. In his time every freeman possessed of land, might give a part of it with his daughter, or any other woman asa marriage portion — orto uny per-pon as a reward for services done him — or to a religious house or church; if the gift were made m his life time,and with the proper forms of livery and seisin, and in a reasonable proportion. But if any such donation rvas made on a death bed, it was not valid, without the consent of the heir. A man who had no estate by inheritance, but only a purchase, might dispose of the whole of that purchase to whom he pleased, by a gift made in his life lime, if he had no child; but if he had one, he could only dispose of apart — nor could he bequeath it by will, although he had no child, because, says Glanville, God only can make an heir.
Now add to all this, the consideration, that a gift in fee condiiionalmss, originally, what the words it was made in, necessarily import, a strict entail, and that the construction put upon these words by the judges before the stat. de do-nis, is confessed on all hands to have been an aslnlia of theirs, to make alien-ations as free as possible, contrary to the will of the donor and the genius of the feudal law, and we must, I think, come to the conclusion, that the courts can go no further, without assuming other powers than those of mere judicature.
I have heard it urged, that the tenant ought to be allowed to devise bis estate, because otherwise, there might be a perpetuity. This would be a very important consideration, if this tendency to a perpetuity could, in fact, be counteracted by the expedient proposed. But unfortunately for the argument this is not the case The right to devise, presupposes the very contingency, the remoteness and uncertainty of which alone may, in some cases, perpetuate the entail. ■■Theright to deviséis contended for, because, say they, it is one mode of alienation: but tenant in fee conditional cannot avail himself of ony mode of alienation until issue had, and this condition being once performed, the estate becomes a fee simple absolute, and the difficulty is at an end.
*100 However, this objection although misapplied in the cascuiuier consideration, is really a Very important one in another point of view; that is a perpetuity/ where the possessor is not allowed to alienate the property — where an heir is forced, upon him per formara doni and he cannot by any assignment or conveyance bar the entaii — not where, if he do not choose, the heir will .succeed secun-dum for/nam doni to the end of time. Thus since Taitarirnys case, estates tail have ceased to be perpetuities, merely because it is now optional with each successive tenant in tail, whether the entail shall continue or not; and any settlement made, on however remote a contingency shall have'effect; provided it be within the reach of a fine or recovery. Thus if an estate be limited to A. for life,, remainder to trustees to preserve, &c. remainder to the first and other sons of A. in tail, remainder over with a proviso, that if B. die and there should be total failure of heirs, or heirs of the body of B. then tile useslimited to A. and his sons should cease, and the lands remain to the use of C. and his heirs; this limitation to C. is valid, because when the first tenant in tail comes into possession, he may bar it by a common recovery, and therefore there is no danger of a perpetuity. Doe v. Heneage,4 L. R. 13. Sanders on Uses and Trusts, 154.
To apply this doctrine to the case' of a fee conditional-, the right to bar such an entail may, it is trae, and in most cases would exist; and so far alienation no!, being absolutely prohibited, or even very much restrained, there might seem to be no reason for considering the gift as creating a perpetuity. Bui then the contingency might not happen: tire having issue is a condition which it does not entirely depend upon the will of the tenant to perform or not, and circumstances may .■ event its being performed for generations together. If, therefore, we are to take the law in the rude stale, we find it in when Bracton wrote, and for some time after, there would often occur cases of actual perpetuities, ps not the danger of perpetuity practically guarded against, by the circumstances that the power of alienation must exist, during the life of every tenant, by the performance of the condition, or the estate revert for want of performance; and thus become unfettered? R.] What is to prevent the judges, then,' adopting with regard to such limitations, the rule that has been applied to contingent remainders, execu-tory devisos and springing uses, and is now considered as a fundamental and univ : sal principle of our jurisprudence, viz. That the right of barring such contingent -fls, shall in no case be extended beyond a life or lives in being,and twenty-one years and a few months after? Only, it might be proper to distinguish be-tiveen those cases where the tenant in fee conditional could not bar, i.e. where there was no issue,'from those where he could bar; viz. where there being issue, be did not choose to aliene the estate inter vivos. In the latter, the doctrine of foe-tml would apply, and therefore no dignus vindice nodus; but the former yynruld demand the extraordinary remedy of the courts; the flieosapo mephsujjs,-